**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| totes ISOTONER CORPORATION | : | Case No.: 2:13-cv-253 |
| 9655 International Blvd. | : | |
| Cincinnati, Ohio  45246-5658 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| R.G. BARRY CORPORATION | : | |
| 13495 Yarmouth Road N.W. | : | |
| Pickerington, Ohio  43147 | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**SUMMARY**

Plaintiff totes Isotoner Corporation ("Isotoner") is known for its slippers.  It has invested significantly to design distinctive, high quality slipper styles, including its iconic black satin ballerina-style slipper.

Despite a long-term relationship with J.C. Penney, Isotoner recently learned that it lost a segment of its slipper business with that customer to Defendant R.G. Barry Corporation ("Barry").  To add insult to injury, Isotoner was shocked to recently discover that Barry had not only replaced Isotoner's lost business at J.C. Penney, but had done so with Isotoner's own distinctive trade dress.  Barry is providing knock-offs of the four best-selling Isotoner slipper designs to J.C. Penney.  Not only has Barry stolen some of Isotoner's business, it is trying to steal Isotoner's good will and reputation by providing products that the consuming public exclusively associates with Isotoner.

Isotoner has developed distinctive trade dress in four slipper styles: the satin ballerina-style slipper, the terry ballerina-style slipper, the terry embroidered clog, and the microterry clog (collectively and individually, "the Slippers Trade Dress"). To prevail on its motion for a temporary restraining order and preliminary injunction, Isotoner must show that it has a strong likelihood of success on the merits, it will suffer irreparable harm without an injunction, an injunction will not cause substantial harm to others, and the public interest would be served by an injunction. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 542 (6th Cir. 2007).

Isotoner is likely to prevail on the merits because its trade dress is not functional, the trade dress is distinctive in the marketplace, and the trade dress of the Barry products is confusingly similar. *Gibson Guitar Corp. v. Reed Smith Guitars, LP,* 423 F.3d 539, 547 n.

10 (6th Cir. 2005). Isotoner's Slippers Line Trade Dress is not functional. It is not essential to the use or purpose of the slippers. The Slippers Trade Dress is distinctive in the marketplace. In addition, because Barry has intentionally copied the Slippers Trade Dress that is sufficient to show secondary meaning, or distinctiveness in the marketplace. *DAP Prods, Inc. v. Color Tile Mfg., Inc.,* 821 F. Supp. 488, 492 (S.D. Ohio 1993). Barry's Infringing Trade Dress is not merely confusingly similar to the Slippers Trade Dress, it is identical:



(Verified Complaint ("VC"), at ¶ 55)



(VC, at ¶ 56)                                                                 (VC, at ¶ 57)



(VC, at ¶ 58)

To prevent this trade dress infringement, unfair competition, false designation of origin, and passing off by Barry, this Court should issue a temporary restraining order and a preliminary injunction requiring Barry to remove all infringing slippers from store shelves and have them destroyed.

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ....................................................................................................1

   A. The Slippers Trade Dress...................................................................................2

      1.   The Satin Ballerina-style Slipper ............................................................. 3

      2.   Terry Ballerina-style Slipper.................................................................... 5

      3.   Terry Embroidered Clog ........................................................................... 6

      4.   Microterry Clog with Pillowstep Insole.................................................... 7

   B. Barry's Slipper Styles .......................................................................................9

   C. Barry's Infringing Activity ..............................................................................10

III. ARGUMENT.......................................................................................................14

   A. The Legal Standard..........................................................................................14

   B. Isotoner Is Likely To Succeed Against Barry On The Merits Of Its Claim Under
      15 U.S.C. § 1125(a).........................................................................................15

      1.   The Slippers Trade Dress Is Not Functional............................................ 15

      2.   The Slippers Trade Dress Has Secondary Meaning ................................. 19

      3.   The Infringing Trade Dress Is Confusingly Similar To The Slippers Trade
           Dress ...................................................................................................... 22

         a)   Strength Of The Mark ......................................................................... 22

         b)   Relatedness Of Goods; Similarity Of Marks; Marketing Channels.................. 22

         c)   Likely Degree Of Purchaser Care ........................................................ 23

         d)   Intent In Selecting The Mark ............................................................... 25

         e)   Likelihood Of Expansion Of The Product Line.................................. 25

         f)   Evidence Of Actual Confusion ............................................................ 25

   C. Isotoner Will Be Irreparably Harmed If The Infringement Is Not Stopped ....26

   D. The Public Will Benefit From Stopping The Infringement...............................26

iv

E. Barry's Harm Will Be Economic And Much Less Than Isotoner's Harm.........................27

IV. CONCLUSION.......................................................................................................................28

# TABLE OF AUTHORITIES

### Cases

*Abercrombie & Fitch Stores, Inc. v. Amer. Eagle Outfitters Inc.,* 280 F.3d 619 (6th Cir. 2002).. 19

*Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.,* 871 F.2d 590 (6th Cir. 1989) ... 19

*Central Benefits Mut. Ins. Co. v. Blue Cross and Blue Shield Ass'n.*, 711 F. Supp. 1423 (S.D. Ohio 1989) ........................................................................................................................ 27

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535 (6th Cir. 2007).......................................................................................................................... i, 14

*DAP Prods, Inc. v. Color Tile Mfg., Inc.,* 821 F. Supp. 488 (S.D. Ohio 1993) ....................... ii, 21

*Ferrari S.P.A. Esercizio Fabrich Automobili E. Corse v. Roberts*, 944 F.2d 1235 (6th Cir. 1991) ........................................................................................................................... 22, 24

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982)........................................................................................................................... 14, 22

*Fuji Kogyo Co. Ltd. v. Pacific Bay Int'l, Inc.*, 461 F.3d 675 (6th Cir. 2006) ............................... 18

*General Motors Corp. v. Lanard Toys, Inc.,* 468 F.3d 405 (6th Cir. 2006) ................................. 15

*Gibson Guitar Corp. v. Reed Smith Guitars, LP,* 423 F.3d 539 (6th Cir. 2005)................... ii, 15

*Ideal Industries, Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018 (7th Cir. 1979) ........................... 26

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844 (1982)................................ 15

*Jones v. City of Monroe, MI,* 341 F.3d 474 (6th Cir. 2003) .................................................... 14

*Processed Plastic Co. v. Warner Comm., Inc.,* 675 F.2d 852 (7th Cir. 1982)............................ 26

*Qualitex Co. v. Jacobson Products Co., Inc.,* 514 U.S. 159 (1995) ............................................ 15

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23 (2001).............................................. 15

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205 (2000)............................................. 15

*Worthington Foods, Inc. v. Kellogg Co.,* 732 F. Supp. 1417 (S.D. Ohio 1990) .......................... 26

**Statutes**

15 U.S.C. § 1125(a) ................................................................................................... 16

## I.      INTRODUCTION

Plaintiff totes Isotoner Corporation ("Isotoner") is known for its slippers.  It has invested significantly to design distinctive, high quality slipper styles, including its iconic black satin ballerina-style slipper.

Despite a long-term relationship with J.C. Penney, Isotoner recently learned that it lost a segment of its slipper business with that customer to Defendant R.G. Barry Corporation ("Barry").  To add insult to injury, Isotoner was shocked to recently discover that Barry had not only replaced Isotoner's lost business at J.C. Penney, but had done so with Isotoner's own distinctive trade dress.  Barry is providing knock-offs of the four best-selling Isotoner slipper designs to J.C. Penney.  Not only has Barry stolen some of Isotoner's business, it is trying to steal Isotoner's good will and reputation by providing products that the consuming public exclusively associates with Isotoner.

To prevent this trade dress infringement, unfair competition, false designation of origin, and passing off by Barry, this Court should issue a temporary restraining order and a preliminary injunction requiring Barry to remove all infringing slippers from store shelves and have them destroyed.

## II.     BACKGROUND

Isotoner has been associated with quality gloves and slippers for decades.  (Verified Complaint ("VC") at ¶ 2)  Founded as a glove manufacturer in 1910, Isotoner has been selling slippers for more than 40 years.  *Id.*  In 1997, it merged with the totes Company to form the totes Isotoner Corporation.  *Id.*  Its slippers are sold worldwide.  *Id.*  It is the owner of the Slippers Trade Dress.  *Id.*

Barry sells its slippers under the brand, Dearfoams.  (VC, at ¶ 3)

Isotoner's "Isotoner" brand and Barry's "Dearfoam" brand are among the top 2-3 brands of slippers among consumers in the United States.  (VC, at ¶ 4)

## A.    THE SLIPPERS TRADE DRESS

Isotoner has been selling slippers to J.C. Penney for decades.  (VC, at ¶ 7)  In August 2012, J.C. Penney informed Isotoner that it would cease buying slippers in the Basics slipper segment[1] from Isotoner because J.C. Penney was reducing its number of vendors. (VC, at ¶ 8) This change was to become effective with the spring 2013 line of merchandise, which is presently being placed in the stores. *Id.*

As the line of Barry slippers began to be introduced into the stores, Isotoner was shocked to discover that several of the Barry slipper styles were copied directly from Isotoner's styles. (VC, at ¶ 10)  The four Isotoner slipper styles Barry appears to have copied have consistently been Isotoner's top selling styles:   the satin ballerina-style slipper, the terry ballerina-style slipper, the microterry clog with Pillowstep® insole, and the terry embroidered clog slipper. (VC, at ¶ 11)

In fiscal years 2002 - 2013, total sales of slippers in the Basics segment by Isotoner to J.C. Penney exceeded $45,000,000.[2]  (VC, at ¶ 12)  Sales to J.C. Penney of the four slipper styles copied by Barry exceeded $22,000,000 in the same time period.  *Id.*  These four styles

---

[1] The Basics segment, sometimes called "Replenishable," consists of slipper styles that are sold year-round, and are distinguishable from the "Fashion" segment that is primarily sold between October and January.  Typically, most national chains (including J.C. Penney, Sears, and Kohl's) and department stores (such as Macy's, Dillard's, and Belk) split their slipper purchases about evenly between the Basics and Fashion segments. (VC, at ¶ 9)

[2] The slippers in the Basics segment at J.C. Penney sell to consumers for about $20 per pair.  (VC, at ¶39)

represented almost one-half of Isotoner's sales of slippers in the Basics segment to J.C. Penney. *Id.*

Isotoner has sold and continues to sell these same four slipper styles to many other customers in the national chain and department store channels of trade.  (VC, at ¶ 13)  Between 2002 and 2013, Isotoner sales of these same four styles through these channels have exceeded $100,000,000.  (VC, at ¶ 14)  These four Isotoner styles represent 56% of the Isotoner slipper sales in the United States between fiscal years 2002 and 2013 in the "Basics" segment.  *Id.*  In that same time frame, these four styles alone represent over 15% of the total sales of *all* slipper styles sold by Isotoner throughout the United States.  *Id.*

### 1.    The Satin Ballerina-style Slipper

Isotoner first introduced satin ballerina-style slippers in the late 1970s.  (VC, at ¶ 15)  The ballerina-style slippers have consistently been a best seller among Isotoner's various slipper styles.  (VC, at ¶ 16)  In fact, they have become so well-known that today they require little to no advertisement to continue to have strong sales.  *Id.*

The distinctive satin ballerina-style slipper has become exclusively associated with Isotoner.  (VC, at ¶ 17)  A brand equity study conducted in 2006 with focus groups in Norwalk, Connecticut, and Charlotte, North Carolina, found that consumers equated the Isotoner brand with stretch gloves and ballerina-style slippers.  *Id.*

The satin ballerina-style slipper has a very distinctive look.  (VC, at ¶ 18)  Its trade dress consists of a combination of shiny stretch satin fabric, a narrow bow of similar fabric, a terry-covered thick-cushioned insole, and a pig split leather sole.[3]  *Id.*  An example of the distinctive

---

[3] Pig split leather is made by splitting the dermal and epidural layers of the pigskin, creating two pieces of thinner garment-weight material.

trade dress of the satin ballerina-style slipper is shown in the photographs below of Isotoner's iconic satin ballerina-style slipper:



*Id.*

The Isotoner satin ballerina-style slippers have been sold at J.C. Penney since at least 2001. (VC, at ¶ 21) J.C. Penney customers know the satin ballerina-style slippers are provided by Isotoner, as shown by a recent customer review found on the J.C. Penney website, which states, "I've been wearing Isotoner Ballerina Slippers for over 30 years. I love them. I would NEVER buy any other kind of slipper, they Rock!" (VC, at ¶ 22)

2.      **Terry Ballerina-style Slipper**

The terry ballerina-style slipper, which has been sold at J.C. Penney since at least 2001 (VC, at ¶ 24), has its own distinctive trade dress: it is made of stretch terry cotton/polyester blend fabric, a satin bow, and a terry-covered thick-cushioned insole.   (VC, at ¶ 23)   The terry ballerina-style slipper is pictured below:



*Id.*

### 3.    Terry Embroidered Clog

The terry embroidered clog was sold at J.C. Penney since at least 2006.  (VC, at ¶ 25)

The distinctive trade dress of the terry embroidered clog consists of terry fabric with a small

pastel floral all-over embroidered pattern on terry material and a side-stitched out sole, as shown

below:





(VC, at ¶ 26)

### 4.     Microterry Clog with Pillowstep Insole

The microterry clog was first launched at Macy's in 2008 and was then launched nationwide, including at J.C. Penney, in 2012.  (VC, at ¶ 27)  It immediately became the fourth biggest selling Basic slipper style at J.C. Penney.  *Id.*  The trade dress of the microterry clog with Pillowstep insole includes a band across the vamp that is made of a fabric different from the fabric of the body of the slipper combined with a side-stitched out sole.  (VC, at ¶ 28)  This combination of trade dress features is shown below:



*Id.*

The Slippers Trade Dress comprises, collectively and individually, the distinctive trade

dress of the satin ballerina-style slipper, the terry ballerina-style slipper, the terry embroidered

clog, and the microterry clog with Pillowstep insole.  (VC, at ¶ 30)  The commercial success of these four slipper styles is due in no small part to their highly distinctive and immediately-recognizable trade dress.  (VC, at ¶ 31)  In light of the long-standing marketing and sale of slippers with the Slippers Trade Dress through national chains and department stores throughout the United States, this trade dress has been associated in the mind of the public solely with Isotoner.  (VC, at ¶ 32)

### B.    BARRY'S SLIPPER STYLES

The Infringing Trade Dress represents a departure for Barry from its other product designs.  (VC, at ¶¶ 41-50)  Before selling the slippers in question to J.C. Penney for its spring 2013 line, Barry had not previously sold or promoted any ballerina-style slippers in the national chain or department store channels of trade.  (VC, at ¶ 41)  The only ballerina-style slipper Barry previously sold was a much less expensive slipper in the mass channel of trade, for stores such as Walmart.  *Id.*  This cheaper slipper did not have a pig split leather out sole or terry-covered thick-cushioned insole, and it was made of a matte fabric, all of which are much less expensive than the shiny fabric, thick cushion, and pig split leather of the Isotoner ballerina-style slipper.  *Id.*  Although it sold numerous clog-style slippers, none had a band across the vamp.  (VC, at ¶ 42)  Barry had also not previously sold or promoted slippers with a stretch terry cotton/polyester fabric like that of the terry ballerina-style slippers.  (VC, at ¶ 43)

Barry also had not sold or promoted in national chains and department stores slippers with a side-stitched out sole like that of the terry embroidered clog or the microterry clog with Pillowstep insole.  (VC, at ¶ 44)  Rather, it has most recently been promoting a much different injection molded sole .  *Id.*  It has used this heavier injection molded sole as a way to distinguish itself in the national chain and department store channels of trade.  (VC, at ¶ 45)

C.    BARRY'S INFRINGING ACTIVITY

Barry had numerous options available to it in designing its slippers and it incorporated many of those options in its slipper lines for years.  (VC, at ¶53)  It is not essential to use any of the Slippers Trade Dress in order to make slippers of a particular quality or price.  *Id.*  Despite that, in designing slippers for J.C. Penney, Barry has intentionally copied the entire Slippers Trade Dress.  (VC, at ¶ 54)

Barry has copied the distinctive trade dress of Isotoner's satin ballerina-style slippers by selling and promoting the slipper designs with shiny stretch satin fabric, a narrow bow of similar fabric, a terry-covered thick-cushioned insole, and a pig split leather sole, as shown by the photographs below, which each depict a Barry slipper recently introduced into J.C. Penney and the corresponding Isotoner slipper:





(VC, at ¶ 55)

Barry has copied the distinctive trade dress of Isotoner's terry ballerina-style slipper by selling and promoting the following slipper design having stretch terry cotton/polyester blend fabric, a satin bow, and a terry-covered thick-cushioned insole, as shown in the photographs below which each depict a Barry slipper recently introduced into J.C. Penney and the corresponding Isotoner slipper:



(VC, at ¶ 56)

Barry has copied the distinctive trade dress of Isotoner's terry embroidered clog by selling and promoting the following slipper design made of terry fabric with a small pastel floral all-over embroidered pattern and a side-stitched out sole, as shown in the photographs below

which each depict a Barry slipper recently introduced into J.C. Penney and the corresponding Isotoner slipper:



(VC, at ¶ 57)

Barry has copied the distinctive trade dress of Isotoner's microterry clog with Pillowstep insole by selling and promoting the following slipper designs having a band across the vamp made of fabric that is different than the fabric of the slipper, and a side-stitched out sole, as shown in the photographs below, which each depict a Barry slipper recently introduced into J.C. Penney and the corresponding Isotoner slipper:








(VC, at ¶ 58)

By mimicking Isotoner's distinctive trade dress from each of the four best selling slipper styles at J.C. Penney and providing slippers that are radically different from slipper styles previously sold by Barry to the national chain and department store channels of trade, Barry has intentionally copied Isotoner's distinctive Slippers Trade Dress *in toto*.  (VC, at ¶ 59)  Barry's unauthorized use of the designs, as pictured above, that are confusingly similar to the Slippers Trade Dress ("the Infringing Trade Dress") is done solely for the purpose of trading off of the good will and consumer recognition of the Isotoner slipper line.  (VC, at ¶ 60)  This is particularly true in light of the fact that slippers with Barry's Infringing Trade Dress are now

13

being sold in the exact place, J.C. Penney, where until recently Isotoner's slippers with the Slippers Trade Dress were available. *Id.* Consumers who have previously seen Isotoner slippers at J.C. Penney are likely to mistakenly assume that the Barry slippers, which are identical and found at the same store, are in fact made or authorized or affiliated with Isotoner. (VC, at ¶ 62)

## III.   ARGUMENT

### A.   THE LEGAL STANDARD

The Court should grant Isotoner's motion for a temporary restraining order and a preliminary injunction, ordering Barry to recall and destroy all slippers incorporating the Infringing Trade Dress, or any portion thereof, and enjoining Barry from continuing to promote, advertise, market, or sell any slippers using the Infringing Trade Dress, or any trade dress confusingly similar to it. The standard this Court must apply in determining whether to grant a temporary restraining order is well settled. Specifically, it must consider and weigh the following factors: whether the movant has a strong likelihood of success on the merits; whether the movant would suffer irreparable injury without the injunction; whether the issuance of the injunction would cause substantial harm to others; and whether the public interest would be served by issuing the injunction. *Certified Restoration Dry Cleaning Network,* 511 F.3d at 542. These considerations are factors to be balanced, not prerequisites that must be met. *Jones v. City of Monroe, MI,* 341 F.3d 474, 476 (6th Cir. 2003). The proof of an intent to confuse or even the existence of actual confusion is not required. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647 (6th Cir. 1982). Each of these elements weighs heavily in favor of this Court's granting Isotoner's motion for a temporary restraining order and preliminary injunction.

### B. ISOTONER IS LIKELY TO SUCCEED AGAINST BARRY ON THE MERITS OF ITS CLAIM UNDER 15 U.S.C. § 1125(A)

Isotoner will prevail on its merits in its action for trade dress infringement against Barry under 15 U.S.C. § 1125(a), which prevents trade dress infringement, unfair competition, false designation of origin, and passing off. "Trade dress has been described by the Supreme Court as the 'design or packaging of a product' which has acquired a 'secondary meaning' sufficient 'to identify the product with its manufacturer or source.'" *General Motors Corp. v. Lanard Toys, Inc.,* 468 F.3d 405, 414 (6th Cir. 2006) (citing *Gibson Guitar Corp. v Reed Smith Guitars, LP,* 423 F.3d 539, 547 (6th Cir. 2005) and quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 28 (2001)). "Trade dress involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Gibson Guitar,* 423 F.3d at 547 n.10. To prevail, Isotoner must prove: 1) the trade dress is not functional; 2) the trade dress is distinctive in the marketplace and has acquired secondary meaning thereby indicating the source of goods; and 3) the trade dress of the accused product is confusingly similar. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 210 (2000).

#### 1. The Slippers Trade Dress Is Not Functional

"'A product feature is functional,' and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article,' that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Products Co., Inc.,* 514 U.S. 159, 165 (1995) quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 850 n.10 (1982). The Slippers Trade Dress is not functional. (VC, at ¶ 33) Slippers have been made of various materials and in various designs for centuries. Barry had grown to be one of the largest suppliers

15

of slippers without making slippers that incorporated the features of the Slippers Trade Dress. (VC, at ¶¶ 4, 41-50)

Barry had not made slippers of a ballerina-style with the features of the Slippers Trade Dress for the national chain or department store channels of trade.  (VC, at ¶ 41)  It had not made slippers of shiny stretch satin fabric or cotton/polyester stretch terry fabric, or with pig split leather soles.  (VC, at ¶¶ 41, 43)  None of its clogs had a distinctive fabric band across the vamp or an all-over embroidered pattern.  (VC, at ¶ 42)  Its clog-style slippers for the national chains or department store channels of trade had not typically been made with a side-stitched out sole. (VC, at ¶44)

Given its success in the slipper market, Barry has not been at a competitive disadvantage because any elements of the Slippers Trade Dress were not previously present in the Barry line of slippers.  Many of the features in the Slippers Trade Dress actually make the slippers more expensive.  (VC, at ¶¶ 34-37)  In addition, Barry has previously advertised the advantages of its different features, such as its injection molded soles.  (VC, at ¶¶ 44-45)

The design choices Isotoner made to create its distinctive Slippers Trade Dress are not essential to the use or purpose of its slippers nor do they adversely affect the cost or quality of the article.  None of the distinctive trade dress of the satin ballerina-style slipper is functional. (VC, at ¶ 34)  The choice of shiny stretch satin fabric, terry-covered thick-cushioned insole, and pig split leather sole are not essential to the slipper's use, or adversely affect its cost or quality when compared to the myriad of other fabrics used to manufacture slippers.  *Id.*  In fact, the shiny stretch satin fabric is more expensive than matte fabric.  *Id.*  Likewise, the pig split leather out sole is more expensive than many other traditional out sole materials used to make slippers. *Id.*  The thick cushion of the insole is also more costly than a thinner cushion because each

additional millimeter of foam thickness adds cost.  *Id.*  The narrow bow made of fabric that matches the slipper body is not essential to the use or purpose of the slipper.  *Id.* The overall look of the satin ballerina-style slipper is not functional and is not essential to the slipper's use. *Id.*

Likewise, none of the unique trade dress of the terry ballerina-style slipper is functional. (VC, at ¶ 35)  The choice of stretch terry cotton/polyester blend fabric and terry-covered thick-cushioned insole are not essential to the slipper's use, or adversely affect its cost or quality when compared to the myriad of other fabrics used to manufacture slippers.  *Id.*  In fact, the use of a cotton/polyester blend fabric is more expensive than a 100% polyester fabric, which is a common slipper fabric.  *Id.*  The satin bow is not essential to the use or purpose of the slipper. *Id.* The overall look of the terry ballerina-style slipper is not functional and is not essential to the slipper's use. *Id.*

The distinctive trade dress of the terry embroidered clog is not functional.  (VC, at ¶ 36) The small pastel floral all-over embroidered pattern on terry fabric is not essential to the slipper's use or purpose.  *Id.*  It is unusual to have an all-over embroidered pattern on slippers.  *Id.*  It does not affect its cost or quality.  *Id.*  In fact, the all-over embroidered pattern increases the cost of the slipper.  *Id.*  The choice of a side-stitched out sole is not essential to the slipper's use, or affect its cost or quality when compared to the myriad of other sole materials, including leather, fabric, and injection molded plastic or rubber used to manufacture slipper soles.  *Id.*  It is not the only option for slipper out soles.  *Id.*  In fact, Barry has used injection molded heavy out soles on many of its slippers.  *Id.*  In the slipper industry, use of injection molded soles is less expensive than use of a side-stitched out soles.  (VC, at ¶ 46) The overall look of the terry embroidered clog is not functional and is not essential to the slipper's use. (VC, at ¶ 36)

Finally, the unique trade dress of the microterry clog with Pillowstep insole is not functional.  (VC, at ¶ 37)  The use of a band across the vamp that is made of a fabric that is different from the fabric of the body of the slipper is not essential to the use or purpose of the slipper.  *Id.*  To assemble such a slipper requires an additional manufacturing step, which increases the cost of the slipper.  *Id.*  There are numerous other clog-style slippers in the market that do not include such a distinctive band.  *Id.*  The choice of a side-stitched out sole is not essential to the slipper's use, or affect its cost or quality when compared to the myriad of other sole materials, including leather, fabric, and injection molded plastic or rubber used to manufacture slipper soles.  *Id.*  It is not the only option for slipper out soles.  *Id.*  As noted above, Barry has used injection molded heavy out soles on many of its slippers, in part no doubt because that is a less expensive option.  *Id.* The overall look of the microterry clog is not functional and is not essential to the slipper's use. *Id.*

In developing the Infringing Trade Dress, Barry has chosen to copy several Isotoner features that are not functional, such as shiny fabrics, bows, embroidered designs, or bands across the vamp of the slipper.  In addition, almost every feature it has copied makes the products more expensive, such as the shiny stretch satin, pig split leather out soles, cotton/polyester stretch terry, the band on the vamp, and side-stitched out soles.  Copying a more expensive material or process is evidence that the copied feature is not functional, but rather serves to identify the source of the product and thus constitutes protectable trade dress.  *Fuji Kogyo Co. Ltd. v. Pacific Bay Int'l, Inc.*, 461 F.3d 675 (6th Cir. 2006).  The Slippers Trade Dress is eligible for trade dress protection because it is not functional for at least all of the reasons set forth above.

## 2.    The Slippers Trade Dress Has Secondary Meaning

The Slippers Trade Dress is distinctive in the marketplace, and thus has acquired secondary meaning.  Seven factors can be considered to determine whether secondary meaning exists in trade dress:  1) direct consumer testimony; 2) consumer surveys; 3) exclusivity, length, and manner of use; 4) amount and manner of advertising; 5) amount of sales and number of customers; 6) established place in the market; and 7) proof of intentional copying.  *Abercrombie & Fitch Stores, Inc. v. Amer. Eagle Outfitters Inc.,* 280 F.3d 619, 640 n.14 (6th Cir. 2002).

The ballerina-style slipper has been associated exclusively with Isotoner, as shown by the 2006 consumer survey, which showed that consumers associated ballerina-style slippers exclusively with Isotoner.  (VC, at ¶ 17)  This survey is particularly telling because it reflects the strength of the affiliation between its ballerina-style slipper and Isotoner prior to Barry's infringement, which is the relevant time period.  *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.,* 871 F.2d 590, 596 (6th Cir. 1989).

All four designs that make up the Slippers Trade Dress have been sold for years.  Isotoner has been selling its satin ballerina-style slippers for decades.  (VC, at ¶ 15)  The satin ballerina-style slippers and terry ballerina-style slippers have been sold at J.C. Penney since at least 2001. (VC, at ¶¶ 21, 24)  J.C. Penney customers rave about the slipper from *Isotoner,* asserting they would never buy a slipper from any other company.  (VC, at ¶ 22)  Clearly, consumers recognize Isotoner as the source of slippers incorporating the Slippers Trade Dress.

The terry embroidered clog has been sold at J.C. Penney since at least 2006.  (VC, at ¶ 25)  The microterry clog with Pillowstep insole has been sold in the department store channel of trade since 2008.  (VC, at ¶ 27)  All of these styles have been regularly sold for years in the national chain and department store channels of trade, thereby establishing their place in the slipper market.

The four styles that make up the Slippers Trade Dress have been big sellers among Isotoner's Basics segment of slippers year after year.  (VC, at ¶¶ 11-14)  Since 2002, Isotoner has sold over $100,000,000 of these four slipper styles, which represents about 56% of Isotoner's total sales of Basics slippers throughout the United States.  (VC, at ¶ 14)  Isotoner has sold over $20,000,000 of these four slipper styles to J.C. Penney since 2002.  (VC, at ¶ 12)  These styles represented almost 50% of Isotoner's sales of Basics slippers to J.C. Penney during that same time period.  *Id.*

The four styles now supplied by Barry were Isotoner's biggest sellers at J.C. Penney and across the country in the Basics segment.  (VC, at ¶¶ 11-14)  J.C. Penney discontinued buying these four styles from Isotoner and now buys the same slippers from Barry.  (VC, at ¶¶ 8, 10)  The four distinctive Isotoner styles were so carefully copied; it is impossible to tell the difference between the two companies' slippers:



(VC, at ¶ 55)



(VC, at ¶ 56)                    (VC, at ¶ 57)



(VC, at ¶ 58)

The only logical conclusion one can draw from these facts is that the Slippers Trade Dress was intentionally copied by Barry. (VC, at ¶ 59) Mere coincidence cannot explain the adoption by Barry of *each* element of the Slippers Trade Dress. Intentional copying is sufficient to establish secondary meaning on preliminary injunction. *DAP Prods, Inc.,* 821 F. Supp. at 492. For at least all of the reasons set forth above, the Slippers Trade Dress has acquired secondary meaning.

3.    **The Infringing Trade Dress Is Confusingly Similar To The Slippers Trade Dress**

To determine whether trade dress is confusingly similar, the Court must balance the Frisch's factors:  strength of the plaintiff's mark; relatedness of the goods; similarity of the marks; evidence of actual confusion; marketing channels used; likely degree of purchaser care; defendant's intent in selecting the mark; and likelihood of expansion of the product line. Frisch's Rest., Inc., 670 F.2d at 648 .  To prevail, Isotoner need not show all, or even most, of the factors.  *Ferrari S.P.A. Esercizio Fabrich Automobili E. Corse v. Roberts*, 944 F.2d 1235, 1242 (6th Cir. 1991).

a)    *Strength Of The Mark*

The Slippers Trade Dress is strong.  As shown above, it is unique in the slipper market in the national chain and department store channels of trade.  Before copying the Slippers Trade Dress in its Infringing Trade Dress, Barry, a large player in the slipper market, had not incorporated any of the elements of the Slippers Trade Dress into its slippers for that channel of trade.  (VC, at ¶ 49)  When surveyed, consumers identified the ballerina-style slipper with Isotoner.  (VC, at ¶ 17)  The four slipper styles that incorporate the Slippers Trade Dress have been the largest sellers in Isotoner's Basic segment of slippers, not only at J.C. Penney, but in the national chain and department store channels of trade throughout the United States.  (VC, at ¶¶ 11-14)  They have been sold for years.  (VC, at ¶¶ 13, 14)  Given its widespread long-term use, commercial success, non-functional features, and consumer recognition, the Slippers Trade Dress constitutes strong marks associated exclusively with Isotoner.

b)    *Relatedness Of Goods; Similarity Of Marks; Marketing Channels*

The Isotoner and Barry goods are not merely related – they are identical.  In the same way, the Infringing Trade Dress is not merely similar to the Slippers Trade Dress, it is identical.

Likewise, the channels of trade are the same:  J.C. Penney has substituted the Barry slippers with the Infringing Trade Dress in the same stores for the Isotoner slippers with the Slippers Trade Dress.  (VC, at ¶ 60)  In addition, the infringing Barry slippers are likewise in the same or similar channels of trade as the Isotoner slippers with the Slippers Trade Dress, which are sold to the market at national chains and department stores.  (VC, at ¶ 13)

<em>c)     Likely Degree Of Purchaser Care</em>

The slippers at J.C. Penney typically are sold to the consumer for less than $20 per pair.  (VC, at ¶39)  At such a price point the consumer is not likely to exhibit great care and thus could be more easily confused about the source if she finds an exact copy of a slipper in the same exact location in the same store.  In addition, the average slipper consumer purchases new slippers no more than once per year.  (VC, at ¶40)  That same consumer is unlikely to remember the details of a purchase likely made more than a year ago.  Faced with a change of label (from Isotoner to Barry) on essentially the same slipper in the same store, the consumer is more likely to think that Barry has purchased Isotoner than that the source of the slippers has changed!  This result is made more likely by the current positioning of the knock-off Barry slippers next to the Isotoner slippers at some J.C. Penney stores:



(VC, at ¶ 61)

The fact that Barry has different packaging, bearing the Dearfoams brand, does not reduce the likelihood of consumer confusion. Infringement of trade dress cannot be remedied by labeling. *Ferrari S.P.A. Esercizio Fabriche Automobili E. Corse,* 944 F.2d at 1244-45. The "real question" is whether the alleged infringer has placed an infringing product into commerce, not whether the immediate purchaser at the point of sale is confused. *Id.* Concerns of confusion extend beyond the purchaser to all consumers and potential consumers. *Id.* Any other application of the law does not adequately protect Isotoner's reputation in the market. *Id.* In this case, because the slippers are identical, the consumer may merely believe there has been a packaging change, but that the slippers are still coming from the same source. The Dearfoams labeling does not remedy that confusion.

d)      *Intent In Selecting The Mark*

Copying of all of the features of the Slipper Trade Dress gives rise to a strong inference that Barry intentionally copied the Slippers Trade Dress. This inference is further bolstered because not only has Barry entirely replaced Isotoner at J.C. Penney in the Basics segment, it has replaced each of the four best selling styles with a slipper that is an exact replica. (VC, at ¶¶ 55-58) Such thorough copying cannot have been the result of innocent happenstance. Such copying must have been intentional. Therefore, the only conclusion that can be drawn is that Barry's intent in selecting its Infringing Trade Dress was to trade on the good will and reputation of Isotoner. (VC, at ¶ 60)

e)      *Likelihood Of Expansion Of The Product Line*

Not only is there a likelihood of expansion of the Barry Infringing Trade Dress into the market of the Isotoner Slipper Line Trade, that expansion has occurred: Barry is selling its slippers where Isotoner's slippers were recently sold. This factor also supports the granting of a temporary restraining order and preliminary injunction.

f)      *Evidence Of Actual Confusion*

Because the Barry slippers have only very recently begun to be displayed at J.C. Penney, Isotoner has not yet learned of any actual confusion. It is asking this Court to enjoin Barry from selling or promoting any of its slippers displaying the Infringing Trade Dress *before* such confusion occurs and before there is any substantial damage to Isotoner's good will or reputation.

The analysis of the seven *Frisch's* factors shows that there is a likelihood of confusion between the Slippers Trade Dress and the Infringing Trade Dress and thus supports the granting of a restraining order and preliminary injunction.

### C. ISOTONER WILL BE IRREPARABLY HARMED IF THE INFRINGEMENT IS NOT STOPPED

Given the unique role trade dress plays in protecting intangible assets such as reputation and goodwill, injury arising out of infringement, passing off and public confusion "are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *Processed Plastic Co. v. Warner Comm., Inc.*, 675 F.2d 852, 858 (7th Cir. 1982):

> The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.

*Id.,* at 858, *quoting Ideal Industries, Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1024 (7th Cir. 1979).

If Barry is permitted to continue use of the Infringing Trade Dress, Isotoner will suffer precisely the type of harm that concerned the *Processed Plastic* court. Isotoner has spent years building its good will and reputation related to quality slippers. It still sells the four slipper styles with the Slippers Trade Dress and they represent over half of its sales in its Basics segment. Allowing the Barry slippers with the Infringing Trade Dress to continue to be sold will erode this valuable good will. Accordingly, this element of the preliminary injunction standard also favors Isotoner.

### D. THE PUBLIC WILL BENEFIT FROM STOPPING THE INFRINGEMENT

The public interest favors issuing a preliminary injunction.

> In trademark cases, public policy concerns may weigh in favor of preliminary injunctive relief because an injunction could halt confusion in the marketplace.

*Worthington Foods, Inc. v. Kellogg Co.,* 732 F. Supp. 1417, 1463 (S.D. Ohio 1990). Likely consumer confusion is an appropriate consideration under the public interest prong of the preliminary injunction standard. *Id.* The public deserves to be certain that, if it is intending to

buy Isotoner slippers, it is in fact getting Isotoner slippers and not mistakenly buying copycat or knock-off product thinking it is sponsored, licensed, affiliated or otherwise associated with Isotoner. This public interest is even more important given that the Barry slippers are now available in the very place where consumers previously found Isotoner slippers.

Isotoner understands that the Barry slippers with the Infringing Trade Dress are being introduced into J.C. Penney stores now. The sooner that on-going process can be stopped, the less J.C. Penney will be inconvenienced. It will have fewer slippers to remove from its shelves than if an injunction is issued at a later date. As a result, issuing a preliminary injunction immediately will lessen the harm to third party J.C. Penney.

### E. BARRY'S HARM WILL BE ECONOMIC AND MUCH LESS THAN ISOTONER'S HARM

Barry may incur some expense if it must recall and destroy the slippers with the Infringing Trade Dress. However, that harm is purely economic in nature. In addition, it is self-inflicted. As a result, Barry's harm must be less than the incalculable diminution, and possible destruction, of Isotoner's valuable good will and reputation embodied in the Slippers Trade Dress.

> A party who willfully proceeds to expend funds on infringing activities cannot claim the loss of those funds as a ground for denying preliminary injunctive relief.

*Central Benefits Mut. Ins. Co. v. Blue Cross and Blue Shield Ass'n.*, 711 F. Supp. 1423, 1435 (S.D. Ohio 1989).

A balancing of all of the factors overwhelmingly lead to the conclusion that Barry should be restrained and enjoined from infringing the Slippers Trade Dress.

IV.     CONCLUSION

Isotoner is a well-known, long-established, and highly regarded brand for slippers.  It has been associated in the minds of consumers with quality slippers, particularly its satin ballerina-style slippers.  It has developed a distinctive line of slippers that is very successful in the national chain and department store channels of trade.  Barry has slavishly copied the distinctive Slippers Trade Dress of these four styles to steal Isotoner's business at J.C. Penney.  That is not fair competition and, as such, Barry's use of the Infringing Trade Dress should be enjoined.

Respectfully submitted,

s/ Ann G. Schoen
Ann G. Schoen (0064234)
David E. Schmit (0021147)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio  45202
(513) 651-6800
(513) 651-6981 (fax)
aschoen@fbtlaw.com
dschmit@fbtlaw.com

Trial Attorneys for Plaintiff
totes Isotoner Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2013, the foregoing was filed electronically with the Clerk of the Court which will send notifications of such filing to all counsel registered with the Court's CM/ECF system and is being served via Hand Delivery by process server on the following:

R.G. BARRY CORPORATION
13495 Yarmouth Road, N.W.
Pickerington, OH 43147

R.G. BARRY CORPORATION
c/o CT Corporation System, Registered Agent
1300 East Ninth Street
Cleveland, OH 44114

s/ Ann G. Schoen

CINLibrary 0089100.0532021  2706327